**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

JUAN R. LÓPEZ-CAPLLONCH,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 25-1001 (MEL)

**OPINION AND ORDER**

I.    **PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the Court is Mr. Juan R. López-Capllonch's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 1. On September 2, 2020, Plaintiff filed an application for disability insurance benefits. Tr. 401-07. Plaintiff alleged that he initially became unable to work due to disability on September 11, 2016 (the "onset date"). Tr. 170. Prior to the onset date, Plaintiff had no past relevant work.[1] Tr. 36. Plaintiff's claim was initially denied on February 5, 2021, and also denied upon reconsideration on April 8, 2021. Tr. 191, 212.

Thereafter, at Plaintiff's request, a hearing was conducted on July 24, 2023, before an Administrative Law Judge (the "ALJ"). Tr. 39-52. On August 24, 2023, after the hearing, the ALJ denied Plaintiff's disability and benefits claim request. Tr. 23-34. Plaintiff filed a Request for Review of the ALJ's decision which was denied by the Appeals Council on November 7, 2024. Tr. 1. This determination rendered the ALJ's decision the final decision of the Commissioner, subject

---

[1] The opinion of the Administrative Law Judge determine that Plaintiff had no past relevant work. Tr. 32. This finding is not contested. Other documents contained in the transcript note that prior to 2016, the Plaintiff worked as a salesman of flowers, fruits and vegetables. *See* Tr. 44, 113, 160.

to judicial review. Tr. 1-5. Plaintiff then filed a civil complaint in this Court on January 2, 2025. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 13, 14.

## II.    LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).

Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe

combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii) ("the listings"). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

## III.    THE ALJ'S DECISION

In her decision dated August 24, 2023, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2020, the date last insured. Tr. 25. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of September 11, 2016, through his last insured date. *Id.* At step two, the ALJ determined that Plaintiff had the following severe impairments: adult attention deficit hyperactivity disorder (ADHD), major depressive disorder, bipolar disorder, generalized anxiety disorder, extrapyramidal disorder, unspecified psychosis, delusional disorder, cocaine delusional

disorder, and cannabis, cocaine, and alcohol abuse. Tr. 26. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. The ALJ specifically considered the criteria of listings 12.03, 12.04, 12.06, 12.11. *Id.* Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: that the claimant can understand, remember, and carry out simple instructions. He can perform simple tasks, working with objects and data rather than with people, in a goal-oriented setting rather than one that requires a consistent pace be maintained throughout the workday. The claimant can adapt to occasional changes in a routine work environment.

Tr. 28.

At step four, the ALJ determined that Plaintiff did not have past relevant work and therefore the transferability of job skills was "not an issue". Tr. 32. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert ("VE"). Tr. 33. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: Marker, Checker I and Cleaner II. *Id.* The ALJ accepted the testimony of the vocational expert. *Id.* Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 34.

## IV.   LEGAL ANALYSIS

Plaintiff advances three claims of error. First, Plaintiff contends that the ALJ erred by concluding that the combinations of impairments the Plaintiff suffered did not meet the requirements of listings 12.03 and 12.04. Next, the Plaintiff argues that the ALJ failed to consider all of the Plaintiff's impairments, not merely the severe ones, when making the determination that there was work in the national economy that the Plaintiff could perform. Finally, Plaintiff takes issue with the

ALJ's adoption of the VE's conclusions that the Plaintiff could perform the jobs Marker, Checker I and Cleaner II.

### A. ALJ's conclusion that Plaintiff did not meet the requirements of listing 12.03 or 12.04.

#### 1. Listing 12.03

Section 12.03 of the listings, schizophrenia and other psychotic disorders, may be satisfied when medical documentation demonstrates the Plaintiff suffers medically documented delusions or hallucinations ("paragraph A") and either an extreme limitation in one of or a marked limitation in two of the four "Paragraph B" areas. An extreme limitation is described as being "[]not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 CFR Part 404, Subpart P, Appendix 1 12.00(F)(2)(e). A marked limitation means that "[]functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 CFR Part 404, Subpart P, Appendix 1 12.00(F)(2)(d). The four Paragraph B areas describe one's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace and (4) adapt or manage oneself. *See* 20 CFR Part 404, Subpart P, Appendix 1 12.00(E).

Plaintiff argues first that there is medical evidence that he suffers delusions or hallucinations and thereby meets paragraph A. The ALJ seems to agree insofar as she notes the Plaintiff has a medically determinable severe impairment of delusional disorder. TR. 26. However, the ALJ makes no specific finding as to whether the requirement of hallucinations or delusions has been satisfied, instead basing her conclusion primarily on the Plaintiff's failure to meet the Paragraph B criteria.

Plaintiff further contends that he meets the paragraph B requirement because he has a marked limitation in both his ability to concentrate, persist or maintain pace, as well as his ability to adapt

or manage himself.[2] If this is so, then Plaintiff would meet the requirements of listing 12.03 and would qualify as disabled.

The ALJ first found that Plaintiff had both moderate limitations in his ability to concentrate, persist or maintain pace. In so finding the ALJ noted that the plaintiff could manage funds, pay bills, perform household chores, go shopping and drive without the assistance of others. Tr. 27. She also considered that Dr. Ricardo Fumero ("Dr. Fumero"), Plaintiff's treating psychiatrist, found that Plaintiff had either only concentration problems or, in some cases, no cognitive defect during his treatment, supporting the conclusion of a moderate limitation. *Id. See also* Tr. 85, 87, 89, 91, 98, 100, 102. Finally, the ALJ found that Dr. Arlene Rivera Mass ("Dr. Rivera"), another treating psychiatrist, noted that while Plaintiff occasionally demonstrated altered concentration, most of the time he demonstrated acceptable concentration. Tr. 27. *See also* Tr. 125, 127, 130, 132, 134, 136, 137, 139, 141, 152, 154, 156, 158, 160, 162, 164, 165, 167, 169.

In contrast, Plaintiff notes that Dr. Fumero also indicated that Plaintiff had only "fair" memory and "poor" speech when he was evaluated on June 26, 2017. Tr. 91.  He further presents that Dr. Adolfo Ruiz, a consulting psychologist, indicated that Plaintiff had poor short-term memory. Tr. 117. Despite this evidence, however, the decision of the ALJ was still based on substantial evidence. While it may be possible to draw the conclusion that Plaintiff had a marked limitation in his ability to concentrate, persist, or maintain pace, that conclusion is not required by the evidence presented. The ALJ's determination that Plaintiff had a moderate limitation in concentration is supported by available evidence that indicates that Plaintiff's concentration problems only manifested some times, but not at all time. The mere fact that there is evidence that could support

---

[2] Plaintiff does not argue that the ALJ's finding that he had a moderate limitation in both his ability to understand, remember, or apply information and his ability to interact with others was without substantial evidence. *See generally* ECF No. 13 at 14. Therefore, the discussion is circumscribed to the latter two paragraph B categories.

the opposite conclusion does not mean that there was not substantial evidence for the conclusion that was drawn. *Jiménez-Portillo v. Garland*, 56 F.4th 162, 167 (1st Cir. 2022).

Likewise, the ALJ's determination that Plaintiff had a moderate limitation in adapting and managing oneself is based on substantial evidence. In concluding that Plaintiff had a moderate limitation the ALJ considered medical sources that noted that the plaintiff had "appropriate appearance, [was] spontaneous, alert, oriented, cooperative, with adequate eye contact, normal thought content, adequate speech, and logical, coherent, and relevant thought process". Tr. 28. She also relied on Plaintiff's statements that he managed stress by sleeping and playing guitar. *Id.* at 27 The ALJ also found persuasive the medical evidence that Plaintiff "exhibited overall appropriate memory, acceptable concentration, and adequate intellect and judgment". *Id.* at 28. However, the ALJ did not explain how this finding, which turns more on the other functional areas such as the ability to concentrate, persist or maintain pace, supports her determination that the Plaintiff is moderately limited in adapting and managing himself.

Plaintiff argues that there is evidence in the record that was not given appropriate consideration. He argues that the findings of Dr. Rivera indicating that he was only "superficially stable", that he was "not functioning adequately" and that he was "compromised in the work area" demonstrate that he has more than a moderate limitation in this area. ECF No. 13 (citing Tr. 134, 136). However, it is not clear that this material, drawn from only two visits to Dr. Rivera, demands a conclusion that Plaintiff was more than moderately limited. Additionally, it is clear the ALJ considered the findings of Dr. Rivera during these visits as she cites them in her analysis of the other functional areas. *See* Tr. 27 (citing exhibit 9F at 6,8; Tr. 134, 136). *See also West v. Berryhill*, No. 17-1170, 2017 WL 6499834 (1st Cir. Dec. 11, 2017) ("the court considers the ALJ's decision as a whole when determining whether substantial evidence supported the ALJ's findings.") (citing

*Irlanda Ortiz v. Sec'y of Health & Human Serv.*, 955 F.2d 765, 769 (1st Cir. 1991)). Finally, as Defendant points out, the ALJ's opinion was consistent with that of the state agency medical examiners, whose opinions, when considered by the ALJ, may constitute substantial evidence. *Ramos v. Barnhart*, 119 F. App'x 295, 296- 97 (1st Cir. 2005) (finding the opinions state agency consultants constituted substantial evidence) (discussing *Berrios Lopez v. Sec'y of Health & Hum. Servs.*, 951 F.2d 427, 431 (1st Cir. 1991) and *Gray v. Heckler*, 760 F.2d 369, 373 (1st Cir. 1985)). While the ALJ's reasoning as to the relevance of some of the evidence she cites could be clearer, her other findings combined with her ample citations to the medical record provide substantial evidence for her conclusion. *See* Tr. 28. Once again, while Plaintiff's recital of evidence beneficial to his case could lead to a different conclusion, it does not demand such a conclusion. *Jimenez-Portillo*, 56 F.4th at 167. Furthermore, should the Plaintiff's limitation in this area be marked rather than merely moderate, that would still not allow him to qualify under Listing 12.03 or 12.04, as the listing requires either marked limitations in two functional areas, or an extreme limitation in one.

### 2.  Listing 12.04

Plaintiff argues in the alternative that he meets the requirements of disabling depressive, bipolar or related disorders under listing 12.04. Listing 12.04 requires that medical documentation of depressive disorder exist, and that, in the case of bipolar diagnosis, the diagnosis be characterized by three or more of the following symptoms:

- a. Pressured speech;
- b. Flight of ideas;
- c. Inflated self-esteem;
- d. Decreased need for sleep;
- e. Distractibility;
- f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
- g. Increase in goal-directed activity or psychomotor agitation.

Part 404, Subpart P, Appendix 1 12.04(A).

Plaintiff argues that he has shown four of the criteria, namely, pressured speech, decreased need for sleep, distractibility, and increase in goal-directed activity or psychomotor agitation. The ALJ did not specifically consider whether Plaintiff's diagnosed bipolar disorder was characterized by these symptoms. Because the ALJ did not consider these symptoms specifically, they are assumed to fall in the Plaintiff's favor.

However, in addition to showing at least three of the above symptoms, Plaintiff also still must show extreme limitation in one of the Paragraph B criteria, or a marked limitation in two. These criteria are the same that apply to listing 12.03. As discussed, the ALJ found, without error, that the Plaintiff did not demonstrate an extreme limitation in one or a marked limitation in two of the Paragraph B criteria. *See infra* Section IV.a.1.

In the alternative to meeting the paragraph B criteria, a Plaintiff may be found disabled under listing 12.04 by meeting the "Paragraph C" criteria. These criteria require, *inter alia*, that there is evidence of marginal adjustment. Marginal adjustment is when the plaintiff has "minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life…." The ALJ did consider the Paragraph C factors and found that the marginal adjustment was not demonstrated by the available record. *See* Tr. 28. Plaintiff does not contest the ALJ's Paragraph C finding in his brief; therefore, there is no cause to upset that finding. Hence, the ALJ's findings that Plaintiff did not meet the requirements of listing 12.04 are also based on substantial evidence.

As a final argument for that he meets the criteria for both 12.03 and 12.04, Plaintiff relies on the diagnostic criteria for his diagnosed disorders of 2025 ICD-10-CM-F 22.0 [Delusional disorders], 2025 ICD-10-CM-F 90.0 [attention-deficit hyperactivity disorder] and 2025 ICD-10-CM F 31.9 [bipolar disorder, unspecified]. However, these diagnostic criteria, which note the clinical characteristics of these mental conditions, do not speak to the paragraph B criteria, as they describe

behaviors and symptoms, not functional limitations. As the Defendant's brief so notes, "mental disorders listings are function-driven, not diagnosis-driven." 81 Fed. Reg. 66138-01, 2016 WL 5341732, at *66155 (Sept. 26, 2016). That is to say that the Plaintiff's cited clinical criteria do not describe how limited the Plaintiff is in the four paragraph B areas but rather describe a set of symptoms associated with the relevant diagnosis. *See also Wilson v. Comm'r of SSA*, No. CV-18-00150-TUC-EJM, 2019 U.S. Dist. LEXIS 146477 (D. Ariz. Aug. 27, 2019) (finding that the failure of the ALJ to add a one-page document containing diagnostic codes to the record was harmless because the ALJ's determination that plaintiff did not meet the listing criteria was predicated on their failure to meet paragraphs B and C of the relevant listing, and the consideration of the diagnostic codes would not alter those conclusions). Therefore, it was not error for the ALJ to not consider these diagnostic criteria when determining whether the plaintiff met the requirements of listing 12.03 or 12.04.

### B.  The ALJ's RFC Determination

Plaintiff next contends that the ALJ erred in describing his RFC. The thrust of this argument is that the ALJ appears to have relied on the Paragraph B and C criteria of the listings instead of using the psychiatric review technique ("PRT") required by SSR 96-8p to perform a function-by-function analysis of the Plaintiff's impairments and that, by failing to do so, the ALJ did not properly consider the non-severe impairments Plaintiff suffered.

Plaintiff is correct that SSR 96-8p requires that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." This assessment, while still based on the

11

Paragraph B and C criteria of the adult mental disorder listings, is a more in-depth analysis than that required when considering the listings. Once done, the ALJ may then describe the exertional level that the Plaintiff is capable of.

Here, the ALJ did not use the function-by-function analysis required by SSR 96-8p. However, considering Plaintiff's case, the ALJ cited the functional-by-function analyses of the state agency consultant. *See* Tr. 32, 184-89, 206-210. By citing these analyses, the ALJ considered all the impairments that were supported by the medical record, not simply the severe ones. The ALJ's failure to restate those findings specifically in her opinion is harmless error.  *Torres v. Comm'r of Soc. Sec.*, No. 18-1842 (MEL), 2022 U.S. Dist. LEXIS 161583 (D.P.R. Sep. 6, 2022). *See also*, *Linares v. Colvin*, No. 5:14-00120, 2015 WL 4389533 (W.D.N.C. July 17, 2015).

### C. The ALJ's adoption of the VE's reasoning

Plaintiff's final argument is that the ALJ erred when she adopted the reasoning of the VE, who asserted the hypothetical person with the age, education, work experience and RFC of the Plaintiff could perform the jobs of Marker, Checker I and Cleaner II. Plaintiff argues that these jobs require a reasoning level of two as defined by the Dictionary of Occupational Titles and that his disabilities preclude him from undertaking work with a reasoning level of two. A reasoning level of two requires that workers "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles ("DOT"), Appendix C, 1991 WL 688702; DOT, Marker, 209.587-034, 1991 WL 671802; DOT, Checker I, 222.687-010, 1991 WL 672130; DOT, Cleaner II, 919.687-014, 1991 WL 687897.

The ALJ found in her analysis of Plaintiff's RFC that he could "understand, remember, and carry out simple instructions." Tr. 28. This does initially appear to contrast the requirements of

reasoning level two. However, "District Court's [sic] in the First Circuit have held that an ability to carry out simple instructions and perform simple tasks is consistent with work that the DOT defines as requiring a reasoning level of 2." *Garcia-Luciano v. Comm'r of Soc. Sec.*, No. 23-1236, 2024 WL 396676, at *7 (D.P.R. Feb. 2, 2024). *See also Pepin v. Astrue*, Civil No. 09-464-P-S, 2010 WL 3361841 at *3 (D. Me. Aug. 24, 2010); *Sue M. v. Berryhill,* No. 1:17-cv-00303-NT, 2018 WL 3698906, (D. Me. Aug. 3, 2018). This is because when the DOT refers to "detailed but uninvolved: instructions", detailed means detailed in terms of the length of the instructions and not their relative complexity. *Garcia-Luciano*, 2024 WL 396676, at *7 (citing *Linwood C. v. Kijakazi*, No. 22-00013-LEW, 2022 WL 10337867 at *10-11 (D. Me. Oct. 18, 2022)). Therefore, the ALJ properly applied the RFC determination to the potential jobs in the national economy provided by the VE.

## V.  CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner that Plaintiff was not entitled to disability benefits contained no legal error as it is supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of July, 2026.

s/Marcos E. López
U.S. Magistrate Judge

13